FILED
2022 Mar-21  PM 02:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **STEVEN VALLE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 6:20-cv-01402-AMM** |
| | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| **Commissioner,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OF DECISION

Plaintiff Steven Valle brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("benefits"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record, the court **AFFIRMS** the decision of the Commissioner.

## I.      Introduction

On August 19, 2017, Mr. Valle protectively filed an application for benefits under Title II of the Act, alleging disability as of September 25, 2015. R. 15, 77, 88. Mr. Valle alleges disability due to a back injury, a neck injury, gastroesophageal reflex disease ("GERD"), and a bicep tendon tear. R. 76. He has at least a high school

1

education, is able to communicate in English, and has past relevant work experience as a brick layer and a construction worker. R. 23-24.

The Social Security Administration ("SSA") initially denied Mr. Valle's application on November 6, 2017. R. 15, 76-87. On January 5, 2018, Mr. Valle filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 15, 94-95. That request was granted. R. 96-98. Mr. Valle received a hearing before ALJ Patrick R. Digby on August 6, 2019. R. 15, 32-66. On October 29, 2019, ALJ Digby issued a decision, finding that Mr. Valle was not disabled from September 25, 2015 through December 31, 2017, the date of last insured. R. 12-25. Mr. Valle was fifty-one years old at the time of the ALJ decision. R. 24-25, 76.

Mr. Valle appealed to the Appeals Council, which denied his request for review on July 21, 2020. R. 1-3. After the Appeals Council denied Mr. Valle's request for review, R. 1-3, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On September 21, 2020, Mr. Valle sought this court's review of the ALJ's decision. *See* Doc. 1.

## II.    The ALJ's Decision

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. § 404.1520. *First*, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity is work activity that involves doing significant physical or mental activities."

20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. *Id*. *Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite his impairments. 20 C.F.R. §§ 404.1520(e), 404.1545. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the

ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the *fifth* and final step. 20 C.F.R. § 404.1520(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with his residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 404.1560(c).

The ALJ determined that Mr. Valle last met the insured status requirements of the Act on December 31, 2017. R. 17. Next, the ALJ found that Mr. Valle did not engage in substantial gainful activity from his alleged onset date through his date of last insured. R. 17. The ALJ decided that Mr. Valle had the following severe impairments: degenerative disc disease of the spine status post anterior cervical discectomy and cervical/lumbar fusions; left bicep tendonesis status post arthroscopy; and migraines. R. 17-18. The ALJ found that Mr. Valle's obesity was "not a severe impairment" because "there is no evidence that the claimant's obesity has any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning." R. 18. Additionally, the ALJ found that Mr. Valle's osteoarthritis of the right hip was "non-severe" because "[t]he record does not show

4

this impairment to cause the claimant more than minimal limitation." R. 18. The ALJ also determined that Mr. Valle's alleged depression was a "non-medically determinable impairment" because "there is no official mental diagnosis of record and no evidence of psychotropic medication use or specialized mental health counseling." R. 18. The ALJ noted that "any other condition, *not specifically mentioned in this decision*, but that may be mentioned briefly in the record is not considered severe." R. 18. Overall, the ALJ determined that Mr. Valle did not have "an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments" to support a finding of disability. R. 18.

The ALJ found that Mr. Valle's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 21. The ALJ found that Mr. Valle had the "residual functional capacity to perform light work" with certain limitations. R. 19. The ALJ determined that Mr. Valle is: limited to occasional lifting and/or carrying, including upward pulling of twenty pounds, and frequent lifting and/or carrying, including upward pulling of ten pounds; able to frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and limited to occasional overhead reaching with the left upper extremity. R. 19. Further, the ALJ determined that Mr. Valle must: not work on ladders, ropes, or scaffolds, at unprotected heights,

or around dangerous machinery; and avoid concentrated exposure to extreme cold and heat. R. 19.

According to the ALJ, Mr. Valle was "unable to perform any past relevant work," he was "a younger individual" on the alleged onset date, he was "closely approaching advanced age" on the date of last insured, and he has "at least a high school education," as those terms are defined by the regulations. R. 23-24. The ALJ determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." R. 24. Because Mr. Valle's "ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations," the ALJ enlisted a vocational expert to ascertain whether there were a significant number of jobs in the national economy that Mr. Valle would be capable of performing. R. 24. That expert testified that there are indeed a significant number of such jobs in the national economy, such as a router, an order caller, and a marker. R. 24-25.

Based on these findings, the ALJ concluded that Mr. Valle did not have a disability as defined in the Act, from September 25, 2015 through December 31, 2017. R. 25. Mr. Valle now challenges that decision.

**III. Factual Record**

The medical records included in the transcript and referenced by Mr. Valle span many years. However, the period relevant to the Commissioner's disability determination is September 25, 2015 through December 31, 2017.

"The medical record reveals that [Mr. Valle] has a history of degenerative changes in the spine and underwent cervical and lumbar fusion surgeries prior to his alleged onset date in 2015." R. 20. *See also* R. 334. September 2016 treatment notes from Southeastern Spine Specialists state that Mr. Valle was released regarding the cervical and lumbar regions of his back, which were healing and not causing pain. R. 334-35. Mr. Valle underwent an MRI of the thoracic spine because of pain to that area. R. 334.

Dr. Kimberly Balasky's treatment notes indicate that throughout 2016 Mr. Valle made complaints about back and neck pain and headaches. R. 357-61. On December 2, 2016, Mr. Valle presented to Dr. Balasky because he "tore [a] tendon" in his shoulder "trying to clean up debris from a storm." R. 356. Dr. Balasky ordered imaging of the left shoulder and left humerus, which showed "normal" bones, joint spaces, and soft tissues and "[n]o fracture or dislocation, lytic or blastic lesion, arthritic disease[,] or soft tissue calcification." R. 370-71. The radiologist's opinion was that Mr. Valle's left shoulder and left humerus was "normal." R. 370-71.

Mr. Valle presented to Dr. Benton Kilman on December 5, 2016 regarding his left torn bicep and should pain. R. 400. Dr. Kilman's noted that that Mr. Valle "is a

farmer and does alot (sic) of lifting." R. 400. Dr. Kilman noted that Mr. Valle's GERD was "[s]table on current regimine" of omeprazole. R. 400. Dr. Kilman also noted that Mr. Valle "has chronic migraine," has a history of "severe spine disease," "had bladder issues," and has "constant persistent pain" for which he takes Mobic, Robaxin, and hydrocodone. R. 400. Dr. Kilman completed a physical exam and noted that Mr. Valle has "abNormal gait, Normal strength, Normal tone . . . diffuse spine pain [and] pain at tendon insetions." R. 402.

On December 7, 2016, Mr. Valle presented to Dr. William Pillow at North East Orthopaedics, after a referral from Dr. Kilman, for left biceps pain. R. 383. Dr. Pillow's notes state that Mr. Valle "had a traction injury of his left shoulder when he was lifting a log and felt a pop" on November 30, 2016. R. 383. Dr. Pillow diagnosed him with a "biceps muscle strain," stated that his shoulder "has an obvious distally displaced biceps," and opined that Mr. Valle "has a proximal biceps tear" for which he would be scheduled for arthroscopy. R. 384. Dr. Pillow completed Mr. Valle's surgery on December 8, 2016. R. 385. Mr. Valle saw Dr. Pillow on December 14, 2016 as follow-up to the surgery. R. 387. Dr. Pillow's Progress Note states that Mr. Valle "had no significant tearing of his rotator cuff. He had a proximal biceps tenodesis. He is doing well." R. 387. Mr. Valle saw Dr. Pillow again on January 4, 2017 as follow-up to the surgery. R. 388. Dr. Pillow's Progress Note states that Mr.

Valle "has full motion of his left shoulder and good motion of his left elbow. His tenodesis site looks fine. His biceps is in a good position." R. 388.

Mr. Valle presented to Dr. Kilman on February 3, 2017 to follow-up on his previous visit and for medication refills. R. 405. Dr. Kilman noted Mr. Valle's successful biceps repair surgery, stable GERD, "constant persistent" "Thorasic Back pain," and use of daily mobic. R. 405. Mr. Valle reported a current pain level of two. R. 406. Dr. Kilman completed a physical exam and noted that Mr. Valle has "abNormal gait, Normal strength, Normal tone . . . [and] diffuse spine pain." R. 407. Dr. Kilman refilled Mr. Valle's prescriptions and planned for him to return to the clinic in one year. R. 408.

Mr. Valle presented to neurologist Dr. Sam Newell at Neurology Consultants on March 7, 2017, after a referral from Dr. Kilman, for migraines. R. 392. Mr. Valle reported having migraines three to four times a month, with nausea, vomiting, pain, and blurry vision. R. 392. Mr. Valle told Dr. Newell that he took over the counter medication for his migraines. R. 392. Dr. Newell prescribed sumatriptan and propranolol for Mr. Valle's migraines. R. 395.

Mr. Valle presented to Dr. Kilman on May 5, 2017 complaining of worsening right hip pain. R. 410. Dr. Kilman noted that Mr. Valle "has had pain in his hip since [he was] a child" and that he underwent a back fusion that helped with back pain. R. 410. Mr. Valle reported a current pain level of eight. R. 410. Dr. Kilman ordered an

x-ray which showed "[n]o acute fracture, dislocation[,] or bone destructive process. Mild degenerative change right hip." R. 426. Dr. Kilman completed a physical exam and noted that Mr. Valle has "abNormal gait, Normal strength, Normal tone, . . . diffuse spine pain," and right hip pain that is worse with lateral rotation. R. 412. Dr. Kilman prescribed prednisone and advised Mr. Valle to return if the pain was not better in ten days. R. 413.

Mr. Valle followed-up with Dr. Kilman on August 29, 2017, complaining of right hip pain and neck pain. R. 414. Dr. Kilman described Mr. Valle's hip pain as "mild" and noted that the "prednisone helped" and Mr. Valle was "on mobic." R. 414. With respect to Mr. Valle's neck, he was experiencing a knot on his upper right neck, which was a problem before and after his neck fusion. R. 414. Dr. Kilman completed a physical exam and noted that Mr. Valle has "abNormal gait, Normal strength, Normal tone, . . . diffuse spine pain[, and] pain on lateral rotation of R hip." R. 416. Dr. Kilman again prescribed prednisone and noted that if Mr. Valle did not improve he would be referred potentially for MRI. R. 417.

Mr. Valle was seen by Nurse Practitioner Lisa Dabbs at Neurology Consultants for a follow-up visit on December 5, 2017. R. 434. Mr. Valle reported that his migraines were occurring more frequently, and he was experiencing severe nausea and vomiting. R. 434. Mr. Valle was prescribed amitriptyline and phenergan suppositories and was told to follow-up in two months. R. 438. Mr. Valle continued

treatment for migraines at Neurology Consultants after December 31, 2017. R. 440-47. In 2018, Mr. Valle received Botox injections to treat his migraines, which "help[ed] with frequency" and did not cause side effects. R. 445. Mr. Valle also underwent an MRI for migraines on January 2, 2018. R. 456, 521.

Dr. Kilman continued to treat Mr. Valle after December 31, 2017. R. 460-69. On March 26, 2018, Mr. Valle presented to Dr. Kilman complaining of low back pain, hip pain, and chest pains. R. 460. Dr. Kilman noted that Mr. Valle "does not sleep well due to chronic pain" and takes Mobic daily. R. 460. Dr. Kilman completed a physical exam and noted that Mr. Valle has "abNormal gait, Normal strength, Normal tone, . . . diffuse spine pain[, and] pain on lateral rotation of R hip." R. 462. Dr. Kilman advised that surgery would likely not help his hip and recommended physical therapy. R. 463. Mr. Valle did "not want to go to physical therapy due to the drive." R. 463. Dr. Kilman also recommended a cardiology workup. R. 463.

On April 30, 2018, Mr. Valle presented to Dr. Kilman to discuss results from his cardiac calcium score and because of "increased pain left hip." R. 465. Dr. Kilman completed a physical exam and noted that Mr. Valle has "abNormal gait, Normal strength, Normal tone, . . . diffuse spine pain[,] pain on lateral rotation of R hip but better[, and] pain in L lumbar paraspinous." R. 467. On July 31, 2018, Mr. Valle presented to Dr. Kilman for a wellness visit. R. 565. Mr. Valle reported that the Botox injections were really helping with his migraines. R. 567. Dr. Kilman

completed a physical exam and noted that Mr. Valle has "abNormal gait, Normal strength, Normal tone, . . . diffuse spine pain[,] pain on lateral rotation of R hip but better[, and] pain in L lumbar paraspinous." R. 567-68. Mr. Valle presented to Dr. Kilman on November 13, 2018, complaining of pain in his hips, knees, and right great toe. R. 569. Dr. Kilman completed a physical exam and noted that Mr. Valle has "abNormal gait, Normal strength, Normal tone, . . . diffuse spine pain[,] pain on lateral rotation of R hip but better radiating to R foot[,] pain in L lumbar paraspinous[, and] minimal pain on rom of L hip." R. 572. In November 2018, Dr. Kilman referred Mr. Valle for physical therapy to strengthen his hips. R. 487, 573. Mr. Valle did physical therapy in 2018 for hip and back pain. R. 487-515.

Mr. Valle followed up on January 15, 2019. R. 574. While the instability in his joint was better, Mr. Valle continued to have nerve pain and burning in his right great toe. R. 575. Additionally, Mr. Valle complained of "mechanical pain in his lumbar" and radiating pain. R. 575. Dr. Kilman completed a physical exam and noted that Mr. Valle has "abNormal gait, Normal strength, Normal tone, . . . diffuse spine pain[,] pain on lateral rotation of R hip but better radiating to R foot[,] pain in L lumbar paraspinous[, and] minimal pain on rom of L hip." R. 577. Dr. Kilman advised that an MRI would be necessary if Mr. Valle was not better in two weeks. R. 578. Dr. Kilman also referred Mr. Valle to Dr. Thompson for pain management. R. 578.

Mr. Valle was seen by Nurse Practitioner Samuel Farris on January 28, 2019, complaining of "mid/lower back [pain] radiating to left side." R. 580. Mr. Valle said he threw out his back when he bent down to pick up a bucket. R. 580. Nurse Practitioner Farris completed a physical exam and noted that Mr. Valle has "Normal gait, Normal strength, Normal tone, . . . Marked TTP to left lumbar spine with tense musculature w/o stepoff or palpable abnormalities. TTP to left thoracic spine with tense musculature w/o stepoff or palpable abnormalities." R. 583. Nurse Practitioner Farris planned to "proceed with MRI [of] thoracic and lumbar spine." R. 585.

Mr. Valle underwent MRIs in 2019 for pain in his thoracic and lumbar spine. R. 478, 482-84, 594-95. Mr. Valle presented to Physician Assistant April Saval on February 18, 2019 for an injection evaluation for back pain. R. 597. Mr. Valle presented to Dr. Robert Thompson on March 5, 2019 complaining of "pain in low back, left hip[,] and leg." R. 605. Dr. Thompson completed an injection. R. 610. Mr. Valle followed-up with Physician Assistant Saval on April 4, 2019 and reported "75% post procedure pain relief." R. 615.

## IV.    Standard of Review

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see*

*Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. § 405(g). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## V.     Discussion

Mr. Valle alleges that the ALJ's decision should be reversed and remanded because it "was not based on substantial evidence and is inconsistent with applicable law." Doc. 13 at 1. Specifically, Mr. Valle argues that the ALJ "failed to properly articulate good cause for according less weight to the opinion of Dr. Kilman, [Mr. Valle's] treating physician"; and the ALJ "failed to properly evaluate the credibility of [Mr. Valle's] complaints consistent with the Eleventh Circuit Pain Standard." *Id.* at 5-19.

### A. The ALJ's Evaluation of Dr. Benton Kilman's Medical Opinion

Mr. Valle first argues that the ALJ erred by failing to articulate good cause for according less weight to the medical opinion of his treating physician, Dr. Kilman. *Id.* at 6. Mr. Valle argues that Eleventh Circuit precedent requires an ALJ to defer to a treating physician's opinion. *Id.*

The SSA has revised the applicable regulations. Historically, the treating source rule provided that a treating physician's opinion was entitled to substantial weight unless good cause is shown to the contrary. *See* 82 Fed. Reg. 5844-01 at 5853 (Jan. 18, 2017); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (explaining the treating source rule). The SSA formalized the treating source rule in 1991 when it implemented regulations that required ALJs to "give more weight to

opinions" from treating sources and to "give good reasons . . . for the weight . . . give[n] [a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2).

New regulations promulgated by the SSA in 2017 do away with the hierarchy of medical opinions and the treating source rule. *Id.* at § 404.1520c(a). Under the new regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" for all claims filed on or after March 27, 2017. *Id.* And the ALJ "will articulate in [his] determination or decision how persuasive [he] find[s] all of the medical opinions . . . in [the claimant's] case record." *Id.* at § 404.1520c(b).

When evaluating the persuasiveness of the opinions, the ALJ considers these factors: (1) supportability, i.e., how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)"; (2) consistency with the evidence; (3) relationship with the claimant, including the nature of the relationship, the length of the treatment relationship, the frequency of examinations, and the extent of the treatment relationship; (4) specialization; and (5) "[o]ther factors," such as the medical source's familiarity with the agency's policies and the evidence in the claim. *Id.* at § 404.1520c(c). It is not improper for an ALJ to consider a claimant's daily activities when evaluating a medical opinion. *See id.* at § 404.1520c(c)(5) (stating that an ALJ

may consider any other relevant factors "that tend to support or contradict a medical opinion").

Supportability and consistency are the most important of the five factors, and an ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions . . . in [his] . . . decision." *Id.* at § 404.1520c(b)(2). The ALJ may explain how he considered the remaining factors, but he is not required to do so. *Id.*

The 2017 regulations apply to Mr. Valle's case. Mr. Valle concedes that he applied for benefits after March 27, 2017. Doc. 13 at 3. Further, the Commissioner has "full power and authority to make rules and regulations" related to the proof and evidence needed to establish a right to benefits under the Act. *See* 42 U.S.C. § 405(a). "A court's prior judicial construction of a statute trumps an agency construction . . . only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005). The Act requires the Commissioner to "make every reasonable effort to obtain from [an] individual's treating physician . . . all medical evidence, including diagnostic tests, necessary in order to properly make [a disability] determination, prior to evaluating medical evidence obtained from any other source on a consultative basis," 42 U.S.C. §§ 423(d)(5)(B), but the Act does not specify how the SSA should

evaluate treating source evidence. And Mr. Valle has cited no case in which the Eleventh Circuit has held that the Act mandated the treating source rule. Nor has Mr. Valle argued that the 2017 regulations are arbitrary, capricious, or otherwise invalid. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 845 (1984) (holding that courts must defer to validly adopted regulations). Accordingly, the 2017 regulations – not the treating source rule – apply to the ALJ's evaluation of the opinion evidence in this case. *See Matos v. Comm'r*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) (stating that the "new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion").

Mr. Valle argues that the ALJ failed to accord proper weight to a July 2, 2019, "To Whom It May Concern" Letter by one of his treating physicians, Dr. Benton Kilman. Doc. 13 at 6. In the letter, Dr. Kilman "outlined [Mr. Valle's] treatment, impairments[,] and resulting limitations" beginning with his December 5, 2016 visit and concluding with his April 2019 visit. *Id.*; R. 621-22. Dr. Kilman opined that Mr. Valle's diagnosis "would include chronic migraines and lumbar spondylosis with chronic back pain." R. 622. Dr. Kilman stated that Mr. Valle "also has chronic neck pain," but Dr. Kilman did not have imaging of Mr. Valle's neck. R. 622. Dr. Kilman wrote that "[b]ased on [Mr. Valle's] description[,] he does have persistent

moderate[] to severe pain. This also causes falls at times. He has been treated with numerous medications. Most recently the Neurontin has caused sleepiness and drowsiness." R. 622. Dr. Kilman noted that while he "would not be able to fully assess [Mr. Valle's] ability to work without a functional capacity exam," he did "think [Mr. Valle] would have difficulty maintaining a job that would involve any physical activity." R. 622. Dr. Kilman continued, Mr. Valle "likely would have trouble with both prolonged standing or prolonged sitting. I imagine he has to alternate between the [two] due to his pain. I do imagine that his migraines could be debilitating at times. He describes this does cause periods of depression." R. 622.

The ALJ considered and discussed in his decision the limitations and findings in Dr. Kilman's letter:

> Dr. Kilman indicated that the claimant would have difficulty maintaining a job with any physical activity. He stated that the claimant would struggle with prolonged standing or sitting and would likely need a sit-stand option. Dr. Kilman has a treating history with the claimant and provided a summary of relevant findings upon examination and refills of medications. This assessment is based upon the subjective complaints of the claimant and on the last visit prior to the date last insured, August 2017, he said his hip pain was better and the prednisone did help. He complained of worsening neck pain and [was] given prednisone. "We discussed about an orthopedic referral. I do not have any record that that was done though." On the visit in March 2018, he complained of exhaustion[,] back and hip pain[,] and that he was unable to participate in physical therapy at that time. He was referred for a calcium score of his heart to risk stratify and his score was zero "which was excellent." He said he

> would not be able to full[y] assess the claimant'[s] ability to work without a functional capacity exam, but he though[t] the claimant would have difficulty maintaining a job that would involve any physical activity, and he would have trouble with both prolonged standing and sitting. He imagined that his migraines "could be" debilitating at time[s].

R. 21-22. The ALJ "considered th[is] medical opinion[] . . . in accordance with the requirements of 20 CFR 404.1520c." R. 19. The ALJ found Dr. Kilman's opinion to be "unpersuasive." R. 21.

The ALJ specified that Dr. Kilman's opinion was "conclusory, speculative[,] and indefinite" and addressed issues reserved for the Commissioner. R. 22. The ALJ stated that Dr. Kilman "is a primary care physician and not an orthopedist or neurologist." R. 22. The ALJ noted that Dr. Kilman's opinion was "not fully consistent with the evidence of record which indicates that [Mr. Valle] has been able to maintain a fairly high level of physical activity" and "inconsistent with the other evidence." R. 22.

Mr. Valle argues that "[t]he ALJ erred as a matter of law by failing to set forth good cause to discount the opinion of Dr. Kilman," but that argument fails because the applicable regulations no longer employ the treating source rule. *See* 20 C.F.R. § 404.1520c. Mr. Valle also argues that "[t]he ALJ erroneously relied upon isolated treatment notes to support his determination" and "did not consider the evidence which is consistent with Dr. Kilman's opinion." Doc. 13 at 7, 11. Additionally, Mr.

Valle argues that "[t]he ALJ erred in his evaluation of [Mr. Valle's] daily activities when finding them inconsistent with Dr. Kilman's opinion." *Id.* at 11.

These arguments fail because the issue before the court is whether substantial evidence supports the ALJ's decision, not whether evidence may support a contrary decision. *See Martin*, 894 F.2d at 1529. As discussed below, substantial evidence supports the ALJ's finding that Dr. Kilman's opinion was inconsistent with the overall record.

Under the new regulations, the ALJ adequately accounted for his finding regarding Dr. Kilman's "To Whom it May Concern" Letter. The ALJ's decision reflects that he considered Dr. Kilman's letter in its entirety in his analysis. R. 21-22. The ALJ expressly considered and cited Mr. Valle's medical records in chronological order in connection with his opinion about Dr. Kilman's letter, including Mr. Valle's medical records from Fulton Medical, Northeast Orthopedics and Sports Medicine, IMA Tupelo, and Neurology Consultants. R. 22. It is this medical evidence that the ALJ found to be inconsistent with Dr. Kilman's letter. R. 22.

Additionally, the ALJ did not ignore the medical evidence that demonstrated abnormal findings. Instead, based on that medical evidence, the ALJ determined that Mr. Valle had three severe impairments and crafted a residual functional capacity to take these severe impairments into account. R. 21-22. The ALJ specifically stated

that "[t]he evidence of record relating to the claimant's migraines, as well as his history of back and upper left extremity impairments, support limiting the claimant to light work with reduced postural and manipulative activity, as well as restricted exposure to hazards and temperature extremes." R. 21.

Mr. Valle's argument that the ALJ mischaracterized his daily activities also fails. *First*, Mr. Valle's testimony about limitations in daily activities was undercut by treatment notes that consistently indicated that Mr. Valle was independent in the activities of daily living. *See* R. 401, 406, 411, 415, 435. *Second*, Mr. Valle himself testified that he takes care of his children while his wife is at work, does chores "as much as [he] can," and picks the children up from school "when [he] can." R. 37. He also testified that he "tr[ies] to maintain [his] property somewhat," though he "can never get out there and work for very long." R. 40. Mr. Valle bushhogs the small area around his house and takes care of chickens. R. 41. *Third*, in his function report, Mr. Valle reported that on days he is able, while he rests and takes naps as needed, he helps his children get ready for school, drives them to school, feeds and waters the chickens and cats, cooks, cleans, performs light yardwork, picks his children up from school, helps prepare dinner, and performs chicken cage repair. R. 275. *Fourth*, Mr. Valle's wife completed a third-party function report that listed similar daily activities, while noting that that Mr. Valle may have to "hold off" or "delay" a job if he had a migraine or was in too much pain. R. 253. The ALJ did not

err by considering the evidence of daily activities that tended to contradict Dr. Kilman's letter.

Additionally, the ALJ noted Mr. Valle's daily activities as only one inconsistency with Dr. Kilman's letter, rather than relying on them solely to determine Mr. Valle's level of impairment. R. 21-22. As discussed above, the ALJ relied on other record evidence in addition to Mr. Valle's daily activities when evaluating Dr. Kilman's letter, including Dr. Kilman's own examination findings and the other medical evidence of record.

The ALJ applied the correct legal standards in evaluating Dr. Kilman's opinion, and substantial evidence supports his finding that it was inconsistent with Dr. Kilman's own treatment records, the medical records as a whole, and evidence of Mr. Valle's daily activities. Mr. Valle has not established that the ALJ erred in his consideration of the medical opinion evidence.

**B. The ALJ's Evaluation Under the Pain Standard**

Mr. Valle next argues that the ALJ failed to properly consider his subjective testimony about his "neck and back pain and migraine headaches." Doc. 13 at 14-19.

A claimant's subjective complaints are insufficient to establish a disability. *See* 20 C.F.R. § 404.1529(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence

of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a claimant claims disability due to pain or other subjective symptoms. The claimant must show evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 404.1529(a), (b); Social Security Ruling 16-3p, 2017 WL 5180304, at *3-*4 (Oct. 25, 2017) ("SSR 16-3p"); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of a claimant's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. § 404.1529(c); *Wilson*, 284 F.3d at 1225-26. In evaluating the extent to which a claimant's symptoms affect his capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of a claimant's symptoms, (3) the claimant's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the claimant takes to relieve symptoms, and (8) any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. § 404.1529(c)(3), (4); SSR 16-3p at *4, *7-*8. To discredit a claimant's

statements, the ALJ must clearly "articulate explicit and adequate reasons." *See*
*Dyer*, 395 F.3d at 1210.

An ALJ's review "must take into account and evaluate the record as a whole."
*McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). There is no rigid
requirement that the ALJ specifically refer to every piece of evidence in his decision.
*Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016). Instead,
the ALJ must consider the medical evidence as a whole and not broadly reject the
evidence in the record. *Id.*

A credibility determination is a question of fact subject only to limited review
in the courts to ensure the finding is supported by substantial evidence. *See Hand v.*
*Heckler*, 761 F.2d 1545, 1548-49 (11th Cir. 1985), *vacated for rehearing en banc*,
774 F.2d 428 (11th Cir. 1985), *reinstated sub nom., Hand v. Bowen*, 793 F.2d 275
(11th Cir. 1986). The Eleventh Circuit will not disturb a clearly articulated finding
supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d
780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains
no indication of the proper application of the pain standard. *See Ortega v. Chater*,
933 F. Supp. 1071, 1076 (S.D.F.L. 1996) (holding that the ALJ's failure to articulate
adequate reasons for only partially crediting the plaintiff's complaints of pain
resulted in reversal). "The question is not . . . whether [the] ALJ could have
reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong

to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

After explaining the pain standard, the ALJ considered Mr. Valle's testimony about his symptoms when making his credibility determination. *See* R. 20. The ALJ described Mr. Valle's testimony in his decision:

> The claimant has alleged limitations resulting from multiple physical impairments that limit his mobility and restrict his activities of daily living. He indicated that he experiences chronic back pain and sleep disturbances. The claimant estimated that he could stand for approximately 15 to 20 minutes, walk and sit for approximately ten minutes each, and lift only five pounds. He reported that chronic migraines cause him difficulty concentrating.

R. 20. After "careful consideration" of the medical evidence of Mr. Valle's back pain and migraines, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." R. 21; *see* R. 20 (chronological discussion of medical evidence). The ALJ then found that Mr. Valle's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 21. In making this finding, the ALJ cited specific evidence: medical evidence that demonstrated "normal neurological findings, a full range of motion, and a normal gait"; Mr. Valle positively responded to "surgery, medication, and injection treatments"; Mr. Valle is "able to perform a range of

outdoor physical activities"; and Mr. Valle is "independent in matters of personal care." R. 21.

The ALJ noted that he evaluated Mr. Valle's "subjective complaints and other allegations in accordance with 20 CFR 404.1529 and SSR 16-3p," but found Mr. Valle's allegations "not fully consistent with the evidence of record." R. 23. The ALJ concluded that "the medical findings do not support the existence of limitations greater than the . . . residual functional capacity." R. 23.

Mr. Valle argues that "the ALJ . . . overlooked parts of [Mr. Valle's] medical record and did not properly consider the evidence in its entirety." Doc. 13 at 16. Mr. Valle points to his "long-standing history of neck and back pain and migraine headaches" as well as evidence of the "severity" of his migraine headaches. *Id.* at 17.

The ALJ did not overlook parts of the medical record. Instead, the ALJ specifically considered Mr. Valle's "long-standing history of neck and back pain and migraine headaches." *See id*. The ALJ discussed Mr. Valle's back surgeries that occurred *before* his alleged onset date and his "history of migraines dating back to his teen years." *See* R. 20. Additionally, the ALJ also discussed Mr. Valle's "continued treatment" of his back issues and MRI of his brain *after* his date of last insured. R. 20-21. And, the ALJ accounted for Mr. Valle's subjective complaints when he determined Mr. Valle was limited to light work with additional limitations.

R. 19-21. Accordingly, there is no error in the ALJ's consideration of Mr. Valle's subjective complaints.

## VI.   Conclusion

Upon review of the administrative record, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** this 21st day of March, 2022.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE